IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER ALLEN BEACH,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br><br>Defendant. | Civil Action No. 8:11-cv-01437-AW |

**MEMORANDUM OPINION**

Plaintiff Christopher Allen Beach brings this action against Defendant Wal-Mart Stores, Inc. Plaintiff asserts claims for wrongful termination and breach of an oral contract. Presently pending before this Court is Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"). The Court has reviewed the entire record, including the pleadings and exhibits, and finds that no hearing is necessary. For the reasons below, the Court **GRANTS** Defendant's Motion to Dismiss.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The Court takes the following facts from Plaintiff Christopher Allen Beach's Complaint and interprets them in the light most favorable to Beach. On April 20, 2011, Plaintiff Christopher Allen Beach ("Plaintiff" or "Beach") filed a Complaint against Defendant Wal-Mart Stores, Inc. ("Defendant" or "Wal-Mart"). Pl.'s Compl. 1, Doc. 2. Wal-Mart hired Plaintiff as a "loss prevention associate" on April 4, 2009. *Id.* at 12. In the "Job Offer" document attained by Plaintiff, Defendant specifically states, "[n]either the offer of this position nor the [j]ob [d]escription relating to this position creates an express or implied contract of employment or

1

any other contractual commitment." *Id.* at 15. Defendant also employed Plaintiff's brother for the same position, who worked in the same Wal-Mart store as Plaintiff. *Id.* at 12. Beach and his brother received approval from the store manager, market manager, and regional loss prevention manager to work together, so long as "one relative was not a direct supervisor of the other." *Id.* However, Defendant underwent a managerial reconstruction months after Beach and his brother received this guarantee, and the new managers agreed that Plaintiff and his brother could no longer work together because it was a violation of Defendant's policy. *Id.* at 12–13. Defendant told Plaintiff of this decision and informed him that his brother was the one in violation of Defendant's policy since he signed his contract after Beach. *Id.* at 13.

After weeks of conference calls, the new market manager and new market human resources manager gave Plaintiff's brother a choice of either leaving the Wal-Mart store or being terminated since he was in violation of the store policy. *Id.* Nevertheless, Plaintiff alleges that Defendant suggested to both him and his brother three options to remediate the violation: (1) transfer to another Wal-Mart store; (2) step down from the loss prevention position; or (3) resign as an employee of Wal-Mart. *Id.* at 9–10, 13. Plaintiff asserts that Defendant told him that he was not required to choose any of the options proposed since was not in violation of the policy. *Id.* at 10. Similarly, Plaintiff asserts that Defendant stated that Plaintiff "would not be terminated for any reason due to the fact that [he] signed by contract to transition into Asset Protection before [his] brother had done so." *Id.* at 13.

The allegation that Wal-Mart promised not to terminate Plaintiff for any reason, however, clashes with other allegations in the Complaint. Plaintiff alleges that Wal-Mart promised to keep him employed only until it resolved his brother's employment status, thereby remedying the

violations of its policy. Pl.'s Opp. 7, Doc. 11.[1] In an equally inconsistent fashion, Plaintiff alleges that the same set of employees that supposedly promised to keep him employed for a definite duration also told him and his brother, after "several weeks of conference calls," that they "should have been terminated before." Compl. 13. Doc. 2.

On June 2, 2011, Defendant filed a Motion to Dismiss against Plaintiff's Complaint. Doc. 9-1.  Plaintiff filed a response to Defendant's Motion to Dismiss on June 14, 2011.  Doc. 11.  On July 1, 2011, Defendant replied in support of its Motion to Dismiss.  Doc. 12.

## II.    STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)).  This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth.  *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County*

---

[1] Although this allegation is based partly on arguments Beach made in his Opposition, the Court may rely on it as it serves to clarify the amorphous allegations asserted in the Complaint. *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000).

*Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III.   LEGAL ANALYSIS

#### A.   Wrongful Termination

Under Maryland common law, an at-will employee has a contractual relationship with his or her employer for an indefinite duration that can be terminated by either party for "any reason, or no reason at all." *Wholey v. Sears Roebuck*, 803 A.2d 482, 488 (Md. 2002); *Suburban Hosp., Inc. v. Dwiggins*, 596 A.2d 1069, 1073 (Md. 1991); *Adler v. Am. Standard Corp.* 432 A.2d 464, 467 (Md. 1981). An at-will employee is an individual hired by his or her employer without "a firm commitment to employ . . . for a specified period of time." *McIntyre v. Guild, Inc.*, 659 A.2d 398, 410 (Md. Ct. Spec. App. 1995).

Wrongful termination, however, is one exception to the at-will employment rule. *Wholey*, 803 A.2d at 488; *see also Ewing v. Koppers Co., Inc.*, 537 A.2d 1173, 1174 (Md. 1988). Thus, in order for a plaintiff to establish a viable wrongful termination claim under Maryland law, the following three elements must be satisfied: "(1) the employee must be discharged, (2) the basis for the employee's discharge must violate some clear mandate of public policy, and (3) there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey*, 803 A.2d at 489; *Shapiro v. Massengill* 661 A.2d 202, 213 (Md. Ct. Spec. App. 1995).

"The public policy exception to the at-will employment doctrine holds that an employee who has been 'discharged in a manner that contravenes public policy,' may bring a cause of action in tort 'for abusive or wrongful discharge against his former employer.'" *Porterfield v.*

*Mascari II, Inc.*, 823 A.2d 590, 602 (Md. 2003) (quoting *Adler*, 432 A.2d at 467). Therefore, for a plaintiff to establish a claim for wrongful discharge, he or she must "specifically identify the clear mandate of Maryland public policy" that was allegedly violated. *Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002); *see also Wholey*, 803 A.2d at 490 ("In exercising our measured authority to define public policy, therefore, we must strive to confine the scope of public policy mandates to clear and articulable principles of law and to be precise about the contours of actionable public policy mandates."). Consonantly, "Maryland's legislative enactments, prior judicial decisions, and administrative regulations serve as the primary sources of the state's public policy." *Szaller*, 293 F.3d at 151 (citing *Adler*, 432 A.2d at 472).

In this case, there is no need to address whether Plaintiff has sufficiently plead all three elements of wrongful termination because he has failed to specifically identify a clear public policy that Defendant violated by terminating his employment with Wal-Mart. Indeed, all Plaintiff does is to state that his employer wrongfully terminated him from Wal-Mart. This is a legal conclusion and, therefore, it is not entitled to the assumption of truth. Accordingly, Plaintiff has failed to state a cognizable wrongful termination claim.

    **B.**    **Breach of Express Oral Agreement**

Under Maryland law, the existence of an employment contract with a fixed term would preclude the applicability of the at-will employment rule. *Lubore v. RPM Assocs., Inc.*, 674 A.2d 547, 554 (Md. Ct. Spec. App. 1996); *see also Adler*, 432 A.2d at 467. To establish that a contract is for a fixed duration, the circumstances, as well as the express and implied terms used, must demonstrate that the parties had a clear intent to enter into a binding agreement for a precise period of time or until certain conditions took place. *See Lubore*, 674 A.2d at 554–55. Maryland follows the objective approach to the law of contracts, where it interprets the terms by determining what a reasonable person in the parties' positions would have meant at the time the

contract came into effect.  *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985).

Here, Plaintiff's central allegation is that Defendant promised to keep him employed until it resolved the violation of company policy by firing or transferring his brother. As explained in the penultimate paragraph of Part I, *supra*, this allegation is not entitled to the assumption of truth because it is inconsistent with other allegations in the Complaint. Thus, as this isolated allegation is the heart of Plaintiff's Complaint, Plaintiff has failed to state a cognizable claim for breach of express oral agreement.

Plaintiff's Complaint would fail even absent this inconsistency. Read as a whole, the allegations in the Complaint lead ineluctably to the inference that Wal-Mart's chief concern was to eliminate the violation of its policy. For instance, Plaintiff alleges that Wal-Mart told him that he could "leave as well to solve the problem." Compl. 13, Doc. 2. In similar spirit, Wal-Mart suggested options to Plaintiff that included quitting, transferring, or stepping down from his loss prevention position. Thus, as the very most, Plaintiff's allegations imply that Wal-Mart sought to work with him so that it could resolve the violation of its policy. In other words, even if Plaintiff was not technically in violation of the policy, his own allegations indicate that he was a significant factor in the existence of the violation. Though possible as a matter of abstract logic, it is not plausible that Wal-Mart promised to keep Plaintiff employed in these circumstances. Accordingly, Plaintiff has failed to state a cognizable claim for wrongful termination.

\*\*\*

While Plaintiff's Complaint is deficient and not facially plausible, documents by pro se litigants are to be construed liberally by the Court. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Likewise, courts hold pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In light of these principles, the Court grants Defendant's Motion to Dismiss *without prejudice* and gives Plaintiff **ten (10) days** from the date of this Opinion to submit an Amended Complaint stating facially plausible claims for wrongful termination, breach of contract, or both.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. A separate Order follows.

|  |  |
|---|---|
| February 3, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |